---

(Superior Court of Cincinnati.)
THE MERCHANTS' NATIONAL BANK v. THE STANDARD WAGON CO et al.

(1). Rebates can not be regarded as partnership profits; and were such not the case, the presumption of a partnership arising from sharing in profits is rebutted where there is no common ownership of property and no mutual agency.

(2). It is beyond the power of corporations to enter into partnerships with individuals or other corporations.

---

JACKSON, J.

The plaintiff seeks to recover from the Standard Wagon Company, as maker, and from the other corporations, sued as defendants herein, as endorsers, upon two certain promis-

sory notes which were discounted and are now held by it.

The first note, for $2,667.38, was executed by the Standard Wagon Company on April 19, 1893, payable four months after date to the order of the Golden Eagle Buggy Company, and was endorsed by the payee and discounted by the plaintiff. The second note, for $4,287.22, dated May 23, 1893, and payable four months after date, was likewise executed by the Standard Wagon Company to the order of the Golden Eagle Buggy Company, and endorsed by the payee and discounted by the plaintiff. There is still due and unpaid on said notes the sum of $4,603.51, which amount plaintiff claims from the defendants together with interest from April 10, 1895. The notes in question were endorsed only by the Golden Eagle Buggy Company, and none of the corporations, defendants herein, except the Standard Wagon Company, directly appear in any wise upon them.

But it is contended on behalf of the plaintiff that the Golden Eagle Buggy Company was, in fact, but a name given to an association or partnership composed of all the corporations, defendants herein, and hence it is sought to hold the individual members or partners upon the endorsement of the association or partnership itself. The Standard Wagon Company is in default for answer, and is clearly liable upon its obligation as maker. Therefore the consideration of the case is limited to the liability of the other defendants.

There is no evidence in the case tending to show that the first note, for $2,667.38, was protested for non-payment, and notice thereof given to the Golden Eagle Buggy Company or to any of the defendants, and hence the cause of action based on said note must be dismissed as to all of the defendants except the Standard Wagon Company, which was the maker thereof. It is not contended that the Golden Eagle Buggy Company acted as the agent of the defendants in the sense that it was expressly authorized by them to borrow the money in question, or that the proceeds of the note

when discounted was accepted or used by defendants or any of them; but the liability, if any, must arise from a general agency growing out of a partnership relation between all of the parties concerned, which would authorize each partner, for all the purposes of the partnership, to bind the others by his individual acts. The facts relied upon to constitute such partnership are substantially as follows: The Standard Wagon Company, a corporation of Kentucky, engaged in the business of manufacturing and selling vehicles, proposed to the other corporations that if each would advance to it the sum of $4,000, by which it would be enabled to manufacture a certain grade of buggies at a reduced cost, it would supply said corporations with buggies at cost price, plus ten per cent. for management, etc. The Standard Wagon Company did not agree to furnish, and the other corporations did not agree to buy, any specified number of buggies.

The evidence in this respect discloses a very indefinite agreement, from which it must be inferred that the companies were entitled at any time to demand from the Standard Wagon Company a return of the $4,000 advanced by each (there being no agreement with regard to interest); that the buggies so manufactured were to be the sole property of the Standard Wagon Company, and that the other companies were merely entitled to purchase, from time to time, such buggies as they desired, upon the terms hereinbefore stated.

From the evidence in the case it is apparent that the consideration for the advance of $4,000 by each company was the ability thereby afforded the Standard Wagon Company to manufacture buggies at cheaper cost, and the privilege of purchasing such buggies at cost plus ten per cent for management. Each year the Standard Wagon Company fixed an arbitrary price for buggies and the other companies purchased buggies at such price, and at the end of the year when the actual cost price was ascertained they received by way of rebate the

difference between the arbitrary price at which they purchased and the actual cost price plus the ten per cent. for management. It is contended that the advancement of $4,000 by each company under the circumstances made them jointly interested in a common enterprise; and that the rebates which they received at the end of each year are to be regarded as profits arising from the common enterprise, and that these facts would in law constitute them partners.

The Golden Eagle Buggy Company was not a corporation in fact, but was merely a name adopted by the Standard Wagon Company, for the management of a part of its business, some time prior to the arrangement herein referred to. After this arrangement the Standard Wagon Company set apart a portion of its plant for the conduct of that part of the business in which the other companies were interested, and this was carried on in the name of the Golden Eagle Buggy Company, and a separate set of books were kept in the name of the latter devoted to the business in question. But the Golden Eagle Buggy Company was but another name for the Standard Wagon Company, and the latter employed all labor, purchased all material and in fact had sole control over the management of this business. The companies paid for the buggies purchased by them from time to time by notes which were frequently made to the order of the Golden Eagle Buggy Company, which notes were discounted in bank and the proceeds passed or deposited to the credit of the Standard Wagon Company.

The note of $4,287.22, dated May 22, 1893, with which we are here concerned, was the renewal of a note made by the Standard Wagon Company to the order of the Golden Eagle Buggy Company. The original note was discounted by the plaintiff and paid for by a check to the order of the Golden Eagle Buggy Company, and this check was endorsed by the said company, and deposited to the credit of the Standard Wagon Company. It is not shown that the defendants or any of them received any part of the proceeds of this loan, nor is shown for what purpose the money was used by the Standard Wagon Company. It may be, although the evidence does not disclose the fact, that it was used in the business in which all of the defendants were interested, but it seems that none of the defendants knew of the execution of said note by the Wagon Company and the discount thereof by the bank, or that any of them ever ratified or acquiesced in the same. But as before stated, it is claimed that the endorsement of the Golden Eagle Buggy Company makes all of the defendants liable as endorsers by reason of the alleged partnership relation.

It seems that all of the defendants received back from the Standard Wagon Company the $4,000 advanced by them, and one of the defendants, Sechler & Company, wrote to the Golden Eagle Buggy Company, saying they desired to withdraw from the arrangement, and wished to be advised as to all "paper bearing the name of the Golden Eagle Buggy Company, as maker or endorser, now unpaid, and when maturing." The Golden Eagle Buggy Company replied to this letter, stating, in substance, that there was outstanding paper to the amount of $14,000, on which all the companies were liable as partners. Sechler & Company made no reply to this letter, and this correspondence is strongly relied upon as tending to show a partnership. It may be here stated that the correspondence in question, and the method of keeping the accounts relating to this business on the books of Sechler & Company, show that that company thought there was a partnership, and that it would be liable as a partner for the obligations of the Golden Eagle Buggy Company. These facts are indeed strong evidence of a partnership, but they are not necessarily conclusive.

Two questions are therefore presented for consideration: First, was there a partnership in fact? and second, could the corporations legally form a partnership so as to make them liable upon the note in question?

Giving to the facts of the case the

most liberal interpretation claimed by the plaintiff, viz., that all of the defendants had a common interest in the joint enterprise, arising out of the contributions made by each and their consequent right to purchase buggies at cost, and that the rebate annually paid the defendants constituted a sharing in the profits of the concern, it must still be held that the defendants were not partners for the purposes of this case.

In Harvey v. Childs, 28 U. S., 319, it was held that:

"Participation in the profits of a business, though cogent evidence of a partnership, is not necessarily decisive of the question. The evidence must show that the persons taking the profits shared them as principals in a joint business in which each has an express or implied authority to bind the other."

On page 321 of this case it was said:

"Although a partnership may be said to rest upon the idea of a communion of profits, nevertheless the foundation of the liability of one partner for the acts of another is the relation they sustain to each other as being each principal and agent."

It was accordingly held in that case that where one party advanced money to another to purchase hogs and was to receive a share in the profits arising from a sale thereof—the hogs however remaining the sole property of the party to whom the money was loaned until a sale was effected—no partnership was created which would make the lender liable for other obligations incurred by the borrower in the purchase of the hogs. In other words it was held that sharing in profits did not necessarily make a partnership where the facts in the case disprove such relation of principal and agent.

In the case at bar the facts clearly disprove such relation of principal and agent. The Standard Wagon Company was not authorized to purchase material, employ labor, or in any wise contract debts on behalf of the other defendants. It was simply loaned a certain sum of money by each defendant to enable it to manufacture buggies cheaply; the buggies did not, however, become the joint property of all the defendants, but remained the sole property of the Standard Wagon Company, and as such subject to all individual claims against said Standard Wagon Company until they had been purchased by the defendants pursuant to agreement. The Standard Wagon Company might have disposed of any and all buggies not purchased by the defendants to any other persons or corporations, and derived the sole profit therefrom. There is evidence to show that it did in this way make a profit from the sale of buggies which was not shared in by the other defendants. The buggies, when manufactured, were not to be divided among the defendants, but purchased by them, and if no buggies were purchased pursuant to the privilege they had, the Standard Wagon Company might sell all of them and keep all of the profits, being liable only to return to the defendants the money advanced by each. It simply agreed to furnish the defendants, at cost, buggies which it should manufacture in its individual capacity and on its own responsibility, in consideration of a loan to it of $4,000 by each, without interest.

Consequently, the presumption of partnership arising from sharing in the profits is completely rebutted by the facts of this case, which show that there was no common ownership of property, and no mutual agency.

But again, the rebates received by the defendants can not, in a partnership sense, be regarded as profits. The rebates simply represented the difference between the arbitrary price fixed each year and the contract price. The receipt of the rebates did not withdraw from the common enterprise any assets to which creditors of the company manufacturing the buggies would be entitled to look.

As said in Bostwick v. Champion, 11 Wend., 571, as reasons why sharing in profits constitutes a partnership:

"The chief reason is that, by the effect of the agreement for a share in the profits, the party takes from the creditors a part of the fund which is proper security to them for the payment of the debts."

Now, in purchasing buggies from the Standard Wagon Company at an agreed price, it certainly can not be claimed that a refunder to the purchaser of the amounts paid in excess of the contract price is a subtraction of any fund to which the creditors of the Standard Wagon Company would be entitled to look for payment of their debts.

A case in all respects similar to the one at bar is found in Slade v. Paschal, 67 Ga., 541, the syllabus. of which is as follows:

"If N. furnished money to P. to conduct business, and the latter was to let him have goods at cost prices, and nothing was said as to interest or profits and losses, this would amount to a loan, and would not constitute N. and P. partners."

A reading of this case will show the exact similarity to the case at bar. It therefore follows that the defendants are not liable as endorsers because they were not partners in fact.

As to the second proposition, it must also be said that it is beyond the powers of corporations to enter into or form partnerships with individuals or other corporations. Corporations are endowed with such powers only as are conferred upon them by their charters, or such as are reasonably necessary to carry into execution the powers granted. It has been said that the enumeration of certain powers implies the exclusion of all others. There is no such authority conferred, either directly or indirectly, in the present case, but on the contrary the formation of a partnership implies the giving of control over the affairs of the corporation to others than their regularly constituted officers and boards of directors. This is expressly forbidden by a statute of this state, Section 3248, which provides in substance that the affairs of corporations must be under the management and control of their boards of directors or trustees.

Again, the formation of partnerhips by corporations subjects the stockholders to additional risks which they can not be presumed to have contemplated; and is furthermore void as against public policy.

While the precise question has not been passed on by the supreme court of this state, it has nevertheless been held in Franklin Bank v. Commercial Bank, 36 Ohio St., 35, and Ry. Co. v. Iron Co., 46 Ohio St., 44, that one corporation can not subscribe for stock in another corporation.

In California Bank v. Kennedy, 167 U. S., 362, it was held that the action of a national bank in subscribing for, or purchasing stock in another banking corporation was unauthorized and void, and that it could not be held liable as such stockholder, notwithstanding it had received dividends on the stock. The decision of the question was based on the following reasons, viz:

"The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law."

The court in that case further said, quoting from the case of Railway Company v. Railway Company, 163 U. S., 564:

"A contract made by a corporation beyond the scope of its powers express or implied, on a proper construction of its charter, can not be enforced or rendered enforceable by the application of the doctrine of estoppel."

It is obvious that much stronger objections would apply to corporations forming a co-partnership than to their subscribing for stock in other corporations, for while the one interests the corporation in the success or failure of another enterprise to the extent only of the stock held by it, the other relation delegates to the partner a full and equal control in the management of its business and makes it liable for all the partnership debts incurred by the partner. Moreover, the best authorities have expressly held that a partnership relation entered into by corporations is illegal and void.

In Pearce v. R. R. Co., 21 Howard, 443, it was said:

"There was no authority of law to·

consolidate these corporations and to place both under the same management, or to subject the capital of the one to answer for the liabilities of the other."

In Canal Co. v. Fulton Bank, 7 Wend., 412, two corporations were allowed to recover from the bank moneys deposited by them as tenants in common, but not on the theory of partnership. In deciding the case the court said:

"It can not be necessary to decide whether it is in the power of the two corporations, who are plaintiffs, to consolidate their stock or form a partnership. General principles are against the power of corporations to do such acts."

It is not necessary to refer to all the cases cited by counsel on both sides on this subject. The best considered case cited by counsel is that of Whittenton Mills v. Upton, 10 Gray, 582. In that case the supreme judicial court of Massachusetts, after an able and exhaustive consideration of the subject, held that "a manufacturing corporation under the laws of this commonwealth can not form a partnership with an individual."

The case of Catskill Bank v. Horace Gray, 14 Barbour, 471, which is strongly relied on by counsel for plaintiff, was where the court found a partnership to have been formed by a corporation and an individual; but in that case the action was not upon the draft which was accepted by one of the partners, but was to recover back the proceeds which it seems were used in furtherance of the joint enterprise. While the fact that the proceeds of the draft were used for the benefit of the partnership concern does not expressly appear from the facts stated, still it is manifest from the reasoning of the court that such was the case. It is in these most important particulars that the case of Bank v. Gray, supra, differs from the case at bar. In the case at bar it is sought to recover on the note, endorsed, it is claimed, by the partnership. It is not sought to recover back the proceeds of the note, and, as a matter of fact, it has not been shown that the proceeds

of the note inured to the benefit of any of the so-called partners except the Standard Wagon Company. There is a well recognized distinction in the law between recovering back money paid or property received under an ultra vires agreement and the enforcement of the agreement itself. If the agreement is ultra vires it can never be affirmatively enforced; even the doctrine of estoppel can not be evoked for this purpose, but where one party receiving a benefit under an ultra vires contract repudiates the contract, then the money or property so received may be recovered back as upon an implied contract for what it has received and consequently has no right to retain.

The rule has been clearly stated in Railway Co. v. Bridge Co., 131 U. S., 371, 389, as follows:

"A contract made by a corporation, which is unlawful and void because beyond the scope of its corporate powers, does not by being carried into execution become lawful and valid, but the proper remedy of the party aggrieved is by disaffirming the contract and suing to recover, as on quantum meruit, the value of what the defendant has actully received the benefit of."

This has been followed with approval in a long line of cases in the United States Supreme Court, important among these being R. R. Co. v. R. R. Co., 145 U. S., 393, and Transportation Co. v. Pullman Co., 139 U. S., 24. In the latter case on p. 59, Mr. Justice Gray, after quoting with approval the above language, said:

"A contract of a corporation, which is ultra vires, in the proper sense, that is to say outside the object of its creation as defined by the laws of its organization, and therefore beyond the powers conferred on it by the legislature, is not voidable only, but wholly void and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract can not be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or

be the foundation of any right cf action upon it."

As the present action is on the contract which, conceding the partnership in fact, has been shown to be ultra vires and is not on a quantum meruit or implied contract, it follows that as to all the defendants, except the Standard Wagon Company, the plaintiff's petition must be dismissed.

Herron, Gatch & Herron, for Plaintiff.

Maxwell & Ramsey, Thornton M. Hinkle, Marsh & Ritchie, for Defendants.